**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Riley J. Wilson, on behalf of himself and all others similarly situated, | ) ) ) | Case No. 11-C-5453 |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| Career Education Corporation, | ) ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff Riley J. Wilson, on behalf of himself and all others similarly situated, by and through his attorneys, states and alleges as follows:

## I.     INTRODUCTION

1.     This case involves Defendant's breach of its employment contracts with Plaintiff and other similarly situated employees who worked as Admissions Representatives (i.e., recruiters of students) at various for profit schools owned and operated by Defendant.  In particular, Defendant's compensation of Plaintiff and other recruiters included a bonus component based on the number of students recruited and the students' continued and successful enrollment once they started at one of Defendant's schools.  Defendant terminated this bonus plan in December 2010 and after February 2011 failed to pay bonuses for students recruited before plan termination.

## II.     PARTIES

2.     Plaintiff Riley J. Wilson is a former employee of Defendant and resides in Saint Paul Park, Minnesota.  He worked for Defendant from about October 6, 2008 through about May 18, 2011.

3.      Defendant Career Education Corporation ("CEC") is a Delaware corporation with its principal executive offices located at 231 North Martingale Road, Schaumburg, Illinois 60173. CEC is engaged in the business of private, for-profit postsecondary education and operates about 11 different schools in the United States, variously located in about 25 states.  Some of these schools also offer on-line courses.

### III.      JURISDICTION AND VENUE

4.      On information and belief, Plaintiff estimates that total damages for the class exceed $5,000,000.  Plaintiff is a resident of Minnesota, Defendant's headquarters are in Illinois, and class members are distributed among at least 25 states.  Thus the amount in issue and the diversity of the parties suffice to give this Court jurisdiction over the parties and alleged causes of action pursuant to 28 U.S.C. § 1332(d).

5.      Venue in this Court is proper under 28 U.S.C. § 1391 because Defendant's principal executive offices are located in this District and Defendant is subject to personal jurisdiction in this District.

### IV.      FACTUAL ALLEGATIONS RELATING TO MR. WILSON

6.      Riley J. Wilson began working for CEC on or about October 6, 2008.  Initially he worked as an Admissions Representative focused on recruiting high school students to attend the Le Cordon Bleu ("LCB") culinary arts college operated by CEC in Mendota Heights, Minnesota. The students he recruited typically began at LCB after graduating from high school.  His title within CEC was High School Admissions Representative.

7.      Until some time in the fall of 2010, CEC also employed Inside Sales Admissions Representatives, who focused on recruiting post high school students within a geographic region tied to a particular CEC school, and National Sales Admissions Representatives, who focused on

2

recruiting post high school students from anywhere in the United States. Admissions

Representatives in all three categories participated in a bonus system established by the

Admissions Representative Supplemental Compensation Plan ("ARSC Plan").

8.      The ARSC Plan contained no provision allowing retroactive termination or amendment.

9.      When Mr. Wilson was negotiating with CEC about his employment with the company,

he was told that if he fulfilled the requirements of the ARSC Plan he would receive bonuses, and

he reasonably expected that the bonuses would be part of his compensation.

10.     The ARSC Plan was based on quarterly thresholds for students (1) recruited by an

Admissions Representative, (2) who started at a CEC school during a quarter, and (3) who

graduated from the school or remained successfully enrolled for a school year. For each such

student above the applicable threshold, the Admissions Representative would be paid a $400

bonus if the Admissions Representative remained employed by CEC at the time the number of

students above threshold was established.

11.     In any given year, the thresholds for the ARSC Plan varied from quarter to quarter, and

the quarterly thresholds were also sometimes changed from year to year. On information and

belief, when such year-to-year changes were made they applied prospectively only.

12.     The thresholds applicable to a given Admissions Representative also depended on

whether he or she was in the High School, Inside Sales or National Sales category, and (on

information and belief) on the CEC school at which he or she worked.

13.     To illustrate how the ARSC Plan worked in practice, the threshold at LCB for High

School Admissions Representatives during the third quarter of 2009 was 15 students, and Mr.

Wilson recruited 23 students who started at LCB during that quarter and who eventually met the

hours and continued enrollment requirements. Based on a nine month academic year, during the

second quarter of 2010 he received bonus payments totaling $3,200 for the eight students above the threshold.

14. During the fall of 2009 Mr. Wilson switched from being a High School Admissions Representative to being an Inside Sales Admissions Representative.

15. As an Inside Sales Admissions Representative, Mr. Wilson recruited 11 students who started in the second quarter of 2010 and who later met the hours and continued enrollment requirements. The LCB threshold for Inside Sales Admissions Representatives for that quarter was 8 students. Thus he was owed bonus payments totaling $1,200 for the three students over the second quarter threshold. He has received only $400.

16. Mr. Wilson recruited 41 students who started in the third quarter of 2010, and on information and belief all or most of them later met the hours and continued enrollment requirements. The LCB threshold for Inside Sales Admissions Representatives for that quarter was 13 students.

17. Of the 41 third quarter 2010 starting students recruited by Mr. Wilson, 34 started on or before August 18, 2010. Thus as of his last day of employment at CEC, May 18, 2011, he was owed bonus payments for approximately 21 third quarter students, or about $8,400. He has received none of this bonus payment.

18. In the fall of 2010 the ARSC Plan was changed by doing away with the distinctions among the three categories, and all Admissions Representatives were to be subject to the same thresholds, which still would vary from quarter to quarter and (on information and belief) from school to school. This change was to be prospective only, meaning that bonuses related to students who started at a CEC school before the fall of 2010 would not be affected by the change.

19.     The fall 2010 change in the ARSC Plan never had any effect on bonuses because the ARSC system was abandoned later that year.  In a document dated December 9, 2010 (the "December Termination"), Defendant announced it was ending the bonus program, and that it would pay bonuses as they came due through February 28, 2011, but not thereafter.  Thus the December Termination effected a retroactive cancellation of potential bonuses that otherwise would have been paid after February 2011 for students who started at a CEC school before December 9, 2010.

20.     The December Termination explained that the reason for ending the ARSC Plan was a federal regulation that would not become effective until 2011.  Though not stated in the December Termination, the effective date was in fact July 1, 2011.  Until that date there was no legal impediment to the payment of bonuses under the ARSC Plan.

## V.     CLASS ACTION ALLEGATIONS

21.     Pursuant to 28 U.S.C. § 1332 and Rule 23(b)(3) of the Fed. Rules of Civ. Proc., Mr. Wilson seeks to prosecute the claims set forth in the following counts as a class action on behalf of all CEC Admissions Representatives who (1) were employed as Admissions Representatives at CEC prior to December 9, 2010, (2) remained employed at CEC after February 28, 2011, and (3) had ARSC bonus payments come due during March, April, May or June 2011 while still employed at CEC.

22.     On information and belief the class defined in the foregoing paragraph is so numerous that joinder of all members is impracticable.  CEC's Securities Exchange Commission Form 10-K filed on February 22, 2011 for the year ending December 31, 2010 states that as of the end of 2010 the company's U.S. schools "employed 2,123 admissions representatives."  On information

and belief, many if not most of these Admissions Representatives had bonuses come due during the defined class period while employed at CEC.

23.     Although the ARSC thresholds varied from school to school and for different types of Admissions Representatives, and the minimum clock or credit hours and the duration of the academic year also might vary from school to school, the ARSC Plan otherwise worked identically for all CEC schools.  The same materials were used to describe the plan to all CEC Admissions Representatives regardless of the school for which they worked.

24.     There are overarching questions of law and fact common to the class relating to (1) whether CEC violated the provisions of the ARSC Plan by failing to pay all bonuses due and owing to its Admissions Representatives in accordance with the Plan; and (2) whether such violations constitute a breach of contract.

25.     The claims of Mr. Wilson are typical of the claims of the class.  He and all other class members were covered by the ARSC Plan and had their bonus compensation determined in accordance with the Plan.

26.     There were only minor school to school variations within the ARSC Plan, and for each member of the class the calculation of damages would involve an identical method of calculation based on: (1) the number of student starts by quarter; (2) the applicable threshold for each quarter; (3) the number of starting students who graduated or successfully completed an academic year; (4) the dollar amount of the per student bonus; and (5) the amounts actually paid to the class member.

27.     Mr. Wilson is well qualified to represent himself and members of the class as defined. He is committed to protecting and will fairly and adequately protect the interests of the class.  In addition, the undersigned counsel will fairly and adequately protect the interests of the class.

These attorneys have extensive experience in class action litigation; they have collectively practiced employment law on behalf of plaintiffs for many years and are familiar with the applicable law; and they are prepared to commit the resources necessary to prosecute this litigation.

28.    Questions of law or fact common to the members of the class predominate over any questions affecting only individual class members, and a class action is therefore superior to other available methods for the fair and efficient adjudication of the issues in controversy. As described above, under the ARSC Plan a common method was used to determine bonuses for all class members, and the calculation of damages would similarly be based on a common methodology. Moreover, the amount at issue for each class member is too small for the effective prosecution of individual claims. In the case of Mr. Wilson the amount is less than $10,000.00.

29.    In the event that the Court determines that Mr. Wilson and members of the class or any part thereof are not "similarly situated," the class definition may be modified or narrowed and/or subclasses may be established as appropriate.

## VI.    COUNT ONE – INDIVIDUAL AND CLASS CLAIM
### (Breach of Contract)

30.    Plaintiff incorporates by reference the foregoing Paragraphs 1 through 29 of this Complaint.

31.    The provisions of the ARSC Plan constituted an express contract between Defendant and Mr. Wilson and between Defendant and other members of the class.

32.    At the time of the December Termination there were students enrolled at LCB (1) who had been recruited by Plaintiff, (2) whose number for at least some quarters exceeded the quarterly bonus threshold, and (3) who remained in the "bonus pipeline" and would eventually

7

qualify Plaintiff to receive bonus payments. When Plaintiff recruited these students he did so subject to the provisions of the ARSC Plan.

33.     During Plaintiff's entire tenure with CEC prior to the December Termination, recruitment bonuses were in fact paid strictly in accordance with the ARSC Plan.

34.     At the time of his resignation from CEC in May 2011 Plaintiff was owed $400.00 bonuses for each of approximately 23 students whose time at LCB qualified Plaintiff to receive a bonus.

35.     Plaintiff has never been paid the bonuses he was due for students who reached the qualifying duration of attendance in March, April or May 2011. The total due comes to approximately $9,200.

36.     On information and belief, other members of the class worked under the same or similar employment contracts with Defendant, and like Plaintiff did not receive bonuses for students who reached the qualifying duration of attendance in March, April or May 2011, and in some cases also in June 2011.

37.     Plaintiff and the class have suffered a loss as a result of Defendant's contractual breaches in an amount to be determined at trial, but reasonably believed to be in excess of $5 million.

38.     By reason of the foregoing, Plaintiff and the class are entitled to judgment against Defendant in an amount in excess of $5 million as well as such further relief as the Court may deem appropriate.

### VII.    COUNT TWO – INDIVIDUAL AND CLASS CLAIM

### (Implied Contract and Unjust Enrichment)

39.     Except for Paragraph 31, Plaintiff incorporates by reference the foregoing Paragraphs 1 through 38 of this Complaint.

40.     The provisions of the ARSC Plan constituted an implied contract between Defendant and Mr. Wilson and between Defendant and other members of the class.

41.     Plaintiff and other class members furnished valuable services to Defendant by recruiting students to enroll at Defendant's schools, for which services to Defendant they reasonably expected to receive bonuses as part of their compensation.

42.     Defendant knowingly accepted the benefit of the recruiting services performed by Plaintiff and other class members by enrolling students they recruited in Defendant's schools.

43.     Defendant failed to pay Plaintiff and other class members all the bonuses due and owing for the students they recruited during their employment with Defendant, which failure was unjust and unfairly benefited Defendant.

44.     Plaintiff and the class have suffered a loss as a result of Defendant's misconduct in an amount to be determined at trial, but reasonably believed to be in excess of $5 million.

45.     By reason of the foregoing, Plaintiff and the class are entitled to judgment against Defendant in an amount in excess of $5 million as well as such further relief as the Court may deem appropriate.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court certify a class pursuant to Rule 23 of the Fed. Rules of Civ. Proc. and award damages to Plaintiff and the plaintiff class in an amount sufficient to compensate them for the bonus payments they are owed by Defendant and such other and further relief as the Court may deem appropriate.

## IX.   JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: August 11, 2011                           Respectfully submitted,


                                                 /s/ Marni Willenson
                                                 WILLENSON LAW, LLC
                                                 542 S. Dearborn St., Suite 610
                                                 Chicago, IL 60605
                                                 (312) 546-4910
                                                 marni@willensonlaw.com

                                                 Bert Black (Minn. Bar No. 0345052)
                                                 Douglas L. Micko (Minn. Bar No. 0299364)
                                                 SCHAEFER LAW FIRM LLC
                                                 400 South Fourth Street, Suite 202
                                                 Minneapolis, MN 55415
                                                 (612) 294-2600
                                                 bblack@schaeferlaw.com
                                                 dmicko@schaeferlaw.com

                                                 Vildan A. Teske (Minn. Bar No. 241404)
                                                 William H. Crowder (Minn. Bar No. 20102)
                                                 Marisa C. Katz (Minn. Bar No. 389709)
                                                 CROWDER TESKE, PLLP
                                                 222 South Ninth Street, Suite 3210
                                                 Minneapolis, MN 55402
                                                 (612) 746-1558
                                                 teske@crowderteske.com
                                                 crowder@crowderteske.com