**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Riley J. Wilson, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 11-CV-5453 |
| vs. | ) ) | |
| Career Education Corporation, | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

October 6, 2011

Sari M. Alamuddin
Andrew Scroggins
Stephanie Christiansen-LaRocco
Morgan Lewis & Bockius LLP
77 W. Wacker Drive
Chicago, Illinois 60601
(312) 324-1000
(312) 324-1001 (facsimile)
salamuddin@MorganLewis.com
ascroggins@MorganLewis.com
schristiansen-larocco@morganlewis.com

*Attorneys for Defendant*

## I.      <u>INTRODUCTION</u>

Plaintiff Riley J. Wilson ("Wilson" or "Plaintiff"), a former Admissions Representative employed by Defendant Career Education Corporation ("CEC" or "Defendant"), has filed a Complaint asserting claims for breach of contract and implied contract / unjust enrichment. Both claims are premised on Wilson's contention that he is entitled to payments he would have received had CEC not discontinued its Supplemental Compensation Plan for Admissions Representatives (the "ARSC Plan") on December 9, 2010. Wilson also seeks to represent a class of Admissions Representatives he contends are owed incentive compensation under the former ARSC Plan.

Wilson's Complaint fails to state a claim upon which relief can be granted. The breach of contract claim (Count I) fails because the plain language of the ARSC Plan – which Wilson tellingly failed to attach to his Complaint – permits CEC to unilaterally terminate or amend the plan at any time, for any reason, at its sole discretion. The implied contract / unjust enrichment claim (Count II) fails because courts will not imply a contract where, as here, an express contract specifies the terms by which Wilson might have earned incentive compensation. Moreover, CEC's decision to terminate the ARSC Plan was prompted by changes in federal regulations and not some unlawful purpose that would invite the Court to imply a contract in order to remedy some injustice.

Accordingly, for the reasons more fully set forth below, the Court should grant CEC's motion and dismiss Wilson's Complaint in its entirety.

## II.     FACTUAL BACKGROUND[1]

CEC is a global education company, based in Schaumburg, Illinois, that offers high-quality education to a diverse student population in a variety of career-oriented disciplines. Complaint ("Compl.") ¶ 3.[2]

Wilson, a resident of Minnesota, worked for CEC from October 6, 2008 through May 18, 2011.  Compl. ¶ 2.  He began his employment as a High School Admissions Representative, before switching to an Inside Sales Representative position in the Fall of 2009.  Compl. ¶¶ 6, 14.  In both positions, he was responsible for recruiting high school students to attend CEC's Le Cordon Bleu culinary arts college in Mendota Heights, Minnesota.  Compl. ¶¶ 6-15.

Wilson was a participant in the Admissions Representative Supplemental Compensation Plan (the "ARSC Plan").  Compl. ¶ 7.  A true and correct copy of the ARSC Plan is submitted as Exhibit B to the Declaration of Jackie Barry.  Under the ARSC Plan, Admissions Representatives were required to satisfy quarterly thresholds (known as Minimum Performance Goals, or "MPG") for enrolling students to start at a CEC school.  Compl. ¶ 10; *see also* Barry Decl. Ex. B.  These thresholds were set on a school-by-school basis.  *Id*.; *see also* Barry Decl. Ex. B.  Admissions Representatives who exceeded the quarterly thresholds were eligible to receive incentive compensation under the ARSC Plan (Compl. ¶ 10; Barry Decl. Ex. B), subject to certain conditions and limitations, including:

---

[1] For purposes of CEC's Motion only, the "facts" alleged in Plaintiff's Complaint are taken as true.  CEC reserves the right to contest Plaintiff's allegations in the event some or all of Plaintiff's claims survive CEC's Motion.

[2] *See also* the declaration of Jackie Barry ("Barry Decl.") ¶ 2 submitted herewith and the accompanying Exhibit A printed from CEC's public website.  The Court may take judicial notice of matters of public record without converting a motion to dismiss to a motion for summary judgment.  *Richards v. Burgett, Inc*., No. 10 C 7580, 2011 WL 1303287 *3 (N.D. Ill. Apr. 4, 2011), citing *Henson v. CSC Credit Servs*., 29 F.3d 280, 284 (7th Cir. 1994).

- The student must have successfully completed either his or her academic program or one academic year of his or her program, whichever is shorter (Compl. ¶ 10; Barry Decl. Ex. B at 1);

- The student must have attained one of these benchmarks within a nine month evaluation period that commences six months after the end of the quarter during which the student starts attendance at the school and that ends fifteen months after the student starts attendance at the school (Barry Decl. Ex. B at 4);

- A student may be counted only one time, regardless of the number of different academic programs the student may enroll in (*id*. at 2);

- The student may not be a CEC employee or a dependent of a CEC employee who is using the CEC National Education Assistance Grant Program (*id*. at 3); and

- The student must have attained one of these benchmarks prior to the resignation or termination of the Admissions Representative (*id*. at 2).

Compl. ¶ 10; Barry Decl. Ex. B.

The express language of the ARSC Plan gave CEC the right to terminate the Plan at any time and for any reason:

> If CEC determines at any time that this Plan should be modified due to the requirements or standards of the U.S. Department of Education or any state agency or accrediting commission, then CEC may be obligated to modify this Plan. *CEC reserves the right to terminate or amend the terms of this Plan at any time, for regulatory compliance purposes or for any other reasons that CEC determines, in its sole discretion. Any interpretation of any provision of this Plan or of any regulatory authority may be made by CEC in its sole discretion.*

Barry Decl. Ex. B at 3 (emphasis added).

On October 29, 2010, the United States Department of Education published final regulations concerning numerous issues affecting educational institutions that participate in federal student financial aid programs. Program Integrity Issues, Final Rule, 75 Fed. Reg. 66832-66975 (Oct. 29, 2010) (to be codified at 34 C.F.R. pts 600, 602, 603, 668, 682, 685, 686, 690, 691). Through the new regulations, the Department of Education sought, among other things, to ensure that "admissions compensation practices do not provide any commission,

bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid to any person or entity engaged in any student recruitment or admission activity[.]" *Id*. at 66873.

Following publication of the new regulations, on December 9, 2010, Wilson and other Admissions Representatives in the Culinary business unit were advised that the ARSC Plan would be discontinued and that Admissions Representatives would cease to earn incentive compensation after February 28, 2011. Compl. ¶ 19. A true and correct copy of the 12/9/2010 announcement is submitted as Exhibit C to the Barry Declaration.

## III.   ARGUMENT

### A.   Standard of Review for a Rule 12(b)(6) Motion.

In ruling on a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir. 2008); *see also Travelers Casualty & Surety Co. of Am. v. Bank of America, N.A.*, No. 09 C 06473, 2010 WL 1325494 *1 (N.D. Ill. Mar. 30, 2010). However, courts need not accept as true "assertions of law or unwarranted factual inferences" contained within the complaint when deciding a motion to dismiss. *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005). A plaintiff must allege "more than labels and conclusions[] and a formulaic recitation of the elements of a cause of action[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Rather, a cause of action must be supported by enough factual matter "to raise a right to relief that is plausible on its face." *Bell Atlantic*, 550 U.S., at 562-63, 570.

In ruling on a motion to dismiss, the Court also may consider documents referenced in the complaint and central to plaintiff's claims. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (affirming district court's decision that motion to dismiss was not converted to

motion for summary judgment by introduction of "documents to which the Complaint had

referred," that were "concededly authentic," and that "were central to the plaintiffs' claim"); *see*

*also Utstarcom, Inc. v. Starent Networks, Corp.*, No. 07 C 2582, 2009 WL 3104402 *1 (N.D. Ill.

Mar. 24, 2009) (granting motion to dismiss after considering employment contracts and other

documents referenced in complaint and central to plaintiff's claims and attached as exhibits to

defendants' motion to dismiss). The "usual example is a contract, in a suit for breach of

contract." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). "[W]ere it not for the exception,

the plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach to his

complaint a document that proved that his claim had no merit. . . The cases therefore allow the

defendant to submit the document to the court, and the court to consider it, without need for

conversion to Rule 56." *Id.* (internal citations omitted). "[T]he Court is not bound to accept the

pleader's allegations as to the effect of the exhibit, but can independently examine the document

and form its own conclusions as to the proper construction and meaning to be given to the

material." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002).

The ARSC Plan is identified repeatedly in the Complaint as the source of Plaintiff's

purported right to incentive compensation and is central to Plaintiff's claims. *See* Compl. ¶¶ 1,

7-13, 15-26, 28, 31-37 and 40. So too is the December 9, 2010 memorandum that terminated the

ARSC Plan and thus constituted the alleged "breach" that prompted this litigation. *See* Compl.

¶¶ 1, 19-20, 32-33. For these reasons, the documents may be considered by the Court in ruling

on this Motion.

**B.      Minnesota Law Governs Wilson's Claims.**

Plaintiff's Complaint is based on diversity jurisdiction (Compl. ¶ 4), so the law that

governs is determined by looking to the conflict-of-law rules of the state in which the federal

court sits. *Kinney v. Hamilton Partners*, No. 03 C 3905, 2004 WL 609805 *3 (N.D. Ill. Mar. 25,

2004) (applying Illinois choice of law rules in claim related to alleged breach of employment severance agreement), citing *Midwest Grain Prods. of Ill., Inc. v. Productization, Inc*., 228 F.3d 784, 787 (7th Cir. 2000). Where, as here, the contract contains no choice of law provision, Illinois courts apply the "most significant contacts" test. *Kinney*, 2004 WL 609805 at *3 (citations omitted). Under the "most significant contacts" test, the Court may consider "the place of contracting, negotiation, performance, location of the subject matter of the contract and the domicile, residence, place of incorporation, and business of the parties." *Id*. (citations omitted).

The State of Minnesota has the most significant contacts related to Wilson's individual claims. Wilson is domiciled and resides in Minnesota. Compl. ¶¶ 2, 4. He was in Minnesota when he asserts that he negotiated with CEC about his employment with the company. Compl. ¶ 9. The work that Wilson claims entitled him to incentive compensation under the ARSC Plan – his recruitment of students to CEC's Le Cordon Bleu culinary arts college in Mendota Heights, Minnesota – occurred in Minnesota. Compl. ¶¶ 6, 14-17, 32, 34. In contrast, Illinois's contacts with the people and events related to this litigation are more limited – namely that CEC's headquarters is located, and some plan administration occurred, in this state. Compl. ¶¶ 3-4. Because Minnesota has the most significant contacts with this dispute, its laws should govern Wilson's claims. *See Palmer v. Beverly Enters.*, 823 F.2d 1105, 1107 (7th Cir. 1987) (holding California law would govern breach of employment contract where the employment relationship centered in California and the employee performed the majority of his work in California, and therefore "California ha[s] the greatest interest in regulating this employment relationship"); *see also Purizer Corp. v. Battelle Mem. Inst.*, No. 01 C 6320, 2002 WL 22014, at * 3 (N.D. Ill. Jan. 7, 2002) (holding Ohio law, rather than Illinois, would govern breach of contract claim where the work contracted for was performed in Ohio).

-6-

C.    **Wilson's Breach of Contract Claim Fails As A Matter Of Law Because
      CEC Retained Sole Discretion To Amend Or Terminate The ARSC Plan.**

Under Minnesota law, a Plaintiff must prove four elements in order to establish a breach

of contract claim: "(1) a valid contract; (2) performance by plaintiff of any conditions precedent;

(3) a material breach of any conditions precedent; and (4) damages." *Parkhill v. Minn. Mut. Life

Ins. Co.*, 174 F.Supp.2d 951, 961 (D.Minn. 2000). "The primary goal of contractual

interpretation is to determine and enforce the intent of the parties. Where the parties express

their intent in unambiguous words, those words are to be given their plain and ordinary

meaning." *Kosek v. The American Express Company*, No. 08-426, 2008 WL 4057534 *2

(D.Minn. Aug. 26, 2008), citing *Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666

N.W.2d 320, 323 (Minn. 2003). "The construction and effect of a contract presents a question of

law, unless an ambiguity exists." *Cengage Learning, Inc. v. Earl*, No. 08-1285, 2008 WL

4857938 *3 (D.Minn. Nov. 10, 2008).

Wilson alleges that the ARSC Plan constituted an express contract with CEC and that his

purported right to incentive compensation was governed by the Plan. Compl. ¶¶ 31-33. Wilson

concedes that CEC terminated the ARSC plan on December 9, 2010 (Compl. ¶ 19; see also Barry

Decl. Ex. C), and that consistent with that announcement he was paid incentive compensation

through February 2011 (Compl. ¶¶ 19, 33). His claims relate only to money he might have

received in March, April or May 2011, had CEC not exercised its right to terminate the ARSC

Plan. Compl. ¶¶ 35-36.

The express terms of the agreement, however, clearly and unambiguously assign CEC the

sole right to terminate or amend the ARSC Plan at any time, for any reason:

> If CEC determines at any time that this Plan should be modified due to the
> requirements or standards of the U.S. Department of Education or any
> state agency or accrediting commission, then CEC may be obligated to
> modify this Plan. *CEC reserves the right to terminate or amend the terms*

> *of this Plan at any time, for regulatory compliance purposes or for any other reasons that CEC determines, in its sole discretion. Any interpretation of any provision of this Plan or of any regulatory authority may be made by CEC in its sole discretion.*

Barry Decl. Ex. B (emphasis added).

It is well-established that a "grant of discretion to a party with regard to a particular term is ordinarily valid and effective: When a contract term leaves a decision to the discretion of one party, that decision is virtually unreviewable." *Kosek*, 2008 WL 4057534 at *2, citing *Brozo v. Oracle Corp.*, 324 F.3d 661, 667 (8th Cir. 2003) (dismissing breach of contract claim asserted on behalf of a class where agreement provided express authorization for one party to define a contract term). A similar principle also has been applied in the employment context, when an employer reserves the right not to follow its policies. *See, e.g., Johnson v. U.S. Bancorp*, 2003 WL 22015838 (Minn. Ct. App. Aug. 26, 2003), citing *Simonson v. Meader Distrib. Co.*, 413 N.W.2d 146, 147-48 (Minn. App. 1987) (holding that a handbook's language may reserve an employer's discretion not to follow its policy manual).

Because the express terms of the ARSC Plan unequivocally allowed CEC to terminate that Plan at any time and for any reason, Wilson has not "raised a right to relief that is plausible on its face". *Bell Atlantic Corp.*, 550 U.S. at 570. For this reason, Defendant respectfully requests that the Court dismiss Count I of the Complaint with prejudice.[3]

---

[3] Although Minnesota law applies, the result would be no different under Illinois law. Applying Illinois law, "[c]ourts have consistently held as a matter of law that a compensation plan does not create an enforceable contract if the language of the plan explicitly provides an employer the right to modify or terminate the plan at any time." *Rudolph v. Int'l Bus. Machines Corp.*, No. 09 C 00428, 2009 WL 2632195 * 3 (N.D. Ill. Aug. 21, 2009) (collecting cases); *see also Schultz v. Sallie Mae, Inc.*, No. 99 C 03613, 1999 WL 988772 * 3 (N.D.Ill. 1999) (granting motion to dismiss where compensation plan's reservation of rights to "modify award calculation and distribution dates at any time, for any reason" barred any reasonable reliance on enforceable contract rights).

**D.** **Wilson's Implied Contract / Unjust Enrichment Claim Fails As A Matter Of Law Because The Dispute Is Governed And Because He Has Not Pled That CEC Engaged In Unlawful Or Illegal Conduct That Would Give Rise To This Equitable Claim.**

"A claim for unjust enrichment arises when a party gains a benefit illegally or unlawfully." *Cengage Learning, Inc.*, 2008 WL 4857938 at *6 (dismissing with prejudice plaintiff's unjust enrichment claim) (internal citations omitted). It is not enough that one party benefits from the efforts or obligations of others." *Id.* Rather, the benefit must be obtained "based on failure of consideration, fraud, or mistake, or situations where it would be morally wrong for one party to enrich himself at the expense of another." *Id.*

Moreover, under Minnesota law, "equitable relief cannot be granted where the rights of the parties are governed by a valid contract." *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 880 (8th Cir. Minn. 2010), quoting *U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981) (affirming trial court judgment on the pleadings that existence of valid contract terminates equitable claim of unjust enrichment). This is so because the courts "cannot use an equitable doctrine to set aside the unambiguous terms of the parties' agreement." *Cengage Learning, Inc.*, 2008 WL 4857938 at *5; *see also Piper Jaffray & Co. v. SunGard Sys. Int'l, Inc.*, No. 04-2922 (DWF/JSM), 2007 WL 541679 *7 (D.Minn. Feb. 16, 2007) (dismissing unjust enrichment claims where the parties alleged and admitted the existence of valid agreements); *Taylor Inv. Corp. v. Weil*, 169 F.Supp.2d 1046, 1060 (D. Minn. 2001) ("The existence of an express contract between parties precludes recovery under theories of quasi-contract, unjust enrichment, or quantum meruit.").

Here, Wilson unquestionably has alleged the existence of a valid agreement that governs his claim for incentive compensation. For example, the Complaint states that "Admissions Representatives. . . participated in a bonus system established by the [ARSC] Plan" (Compl. ¶ 7);

Plaintiff Wilson and others "were covered by the ARSC Plan and had their bonus compensation determined in accordance with the Plan" (Compl. ¶ 25); "other members of the class worked under the same or similar employment contracts with Defendant" (Compl. ¶ 36); and "Plaintiff and the class have suffered a loss as a result of Defendant's contractual breaches" (Compl. ¶ 37). *See also* Compl. ¶¶ 8-13, 23-24, 26, 28, 32-33. Each of these allegations is incorporated in Plaintiff's Count II claim of unjust enrichment. *See* Compl. ¶ 39. Having premised his unjust enrichment claims on the existence of the ARSC Plan, Wilson may not resort to an implied contract claim to avoid its express terms. *See M.M. Silta*, 616 F.3d at 880 (finding the parties' agreement permitted defendant to unilaterally terminate the agreement, and plaintiff cannot claim defendant was unjustly enriched by acting in accordance with the contract); *see also Taylor Inv. Corp.*, 169 F.Supp.2d at 1060 ("Here, as discussed above, the license agreement governs the parties' relationship with respect to the StarBuilder software. Consequently, Taylor is precluded from recovery under the theory of unjust enrichment.").[4]

Furthermore, Wilson has not alleged that CEC engaged in fraud or any other actionable wrongdoing, nor could he: CEC discontinued its ARSC Plan because the new Department of Education regulations prohibited it from continuing to offer this type of incentive compensation plan. Barry Decl., Ex. B. Rather, his claim is that he and others "furnished valuable services to Defendant by recruiting students to enroll at Defendant's schools, for which services to Defendant they reasonably expected to receive bonuses as part of their compensation." *See* Compl. ¶ 41. Since this benefit to CEC was not obtained by unlawful conduct, however, it

---

[4] Again, the result would be no different under Illinois law. In Illinois, too, a plaintiff "may not include allegations of an express contract which governs the relationship of the parties in the counts for unjust enrichment[.]" *Guinn v. Hoskins Chevrolet*, 361 Ill.App. 3d 575, 604 (Ill. App. 1st Dist. 2005) (quotations omitted); *see also Duffy v. Ticketreserve, Inc*., 722 F.Supp.2d 977, 993 (dismissing unjust enrichment claim where the relationship is governed by a contract, and plaintiff incorporated the allegations that established the grounds for the express contract as part of her unjust enrichment claim).

cannot give rise to an unjust enrichment claim. *Cengage Learning, Inc.*, 2008 WL 4857938 at *6.

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, Defendant Career Education Corporation respectfully requests that this Court grant CEC's Motion and enter an Order dismissing Plaintiff's Complaint in its entirety and with prejudice, and grant such other relief to CEC as the Court deems just and proper.

October 6, 2011                                      Respectfully submitted,

Career Education Corporation

 s/ Andrew Scroggins
Sari M. Alamuddin
Andrew Scroggins
Stephanie Christiansen-LaRocco
Morgan Lewis & Bockius LLP
77 W. Wacker Drive
Chicago, Illinois 60601
(312) 324-1000
(312) 324-1001 (facsimile)
salamuddin@MorganLewis.com
ascroggins@MorganLewis.com
schristiansen-larocco@morganlewis.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I, Andrew Scroggins, hereby certify that on October 6, 2011, I electronically filed a copy of the foregoing **Motion to Dismiss** with the Clerk of Court using the CM/ECF system which will send notification of such filings to the following:

> Marni Willenson
> marni@willensonlaw.com
> WILLENSON LAW, LLC
> 542 S. Dearborn St., Suite 610
> Chicago, IL 60605
> (312) 546-4910
>
> Bert Black
> bblack@schaeferlaw.com
> Douglas L. Micko
> dmicko@schaeferlaw.com
> SCHAEFER LAW FIRM LLC
> 400 South Fourth Street, Suite 202
> Minneapolis, MN 55415
> (612) 294-2600
>
> Vildan A. Teske
> teske@crowderteske.com
> William H. Crowder
> crowder@crowderteske.com
> Marisa C. Katz
> katz@crowderteske.com
> CROWDER TESKE, PLLP
> 222 South Ninth Street, Suite 3210
> Minneapolis, MN 55402
> (612) 746-1558

s/ Andrew Scroggins
Andrew Scroggins

DB1/ 68094153